HEARD NOVEMBER TERM, 1878.

CASE No. 716.

FRASER & DILL ET AL. v. CITY COUNCIL OF CHARLESTON ET AL.

1. An appeal from findings of fact by a referee, which were sustained by the Circuit decree, dismissed—there being neither a lack of evidence to warrant such findings, nor such preponderance of evidence on the other side as would justify a reversal.

2. Where an executor has been removed from office and a receiver appointed in his stead, by the judgment of the Circuit Court, in accordance with a prayer of the complaint, and no exception is taken thereto on an appeal from other parts of the same judgment, the property passes into the possession of the court; and a subsequent judgment, in so far as it provides for a proper administration of the estate, furnishes no ground for appeal.

3. A certificate of city stock, transferable, according to its terms, only at the office of the city treasurer, by appearance in person or by attorney, was endorsed in blank by the legal owner, and delivered to one who pledged the same to a bank as collateral security for a loan; the owner died, and the certificate was, by virtue of a transfer written over his name by the cashier, transferred to the bank on the books of the city treasurer, after the death of said owner. *Held*, that the endorsement and delivery was an equitable assignment, and that the subsequent transfer to the bank was proper.

4. The provisions of the certificate itself, as to its transfer, are designed solely for the safety and security of the corporation itself, and of purchasers without notice.

5. *Query :* Will the hypothecation of a certificate of stock by the legal owner, or with his consent or subsequent acquiescence, without endorsement or power of attorney, constitute by delivery an equitable assignment, and act as an estoppel against the legal owner and creditors claiming through him?

6. A defence, even if not alleged in the answer, may be relied upon by defendants, when it is the point involved in an issue framed by order of this court for trial in the court below.

7. A general denial of title admits the defence of title diverted by equitable assignment.

Before WALLACE, J., at Charleston, February Term, 1878.

This case, having been before this court once before on appeal, will be found fully reported in 8 *S. C.* 318. It is unnecessary to repeat here any portion of the case up to that time. The

subsequent proceedings are set forth in the referee's supplemental report, which is as follows:

*To the Honorable the Presiding Judge of the First Circuit:*

I beg leave to make to the court the following report:

Chief Justice Moses, in delivering the opinion of the Supreme Court on the appeal taken in this cause, filed on the 12th of December, 1876, says:

" The only question presented by the appeal arises out of the exception of the city council of Charleston, one of the defendants in the cause, to so much of the Circuit decree as established the right to certain city stock in Col. Joseph Whaley, at the time of his death, and requires the said council to account for so much of the same as it has sold and transferred;" and the case was remanded to the Circuit Court to be referred to the referee " for the purpose of allowing the city council to offer evidence of their right to the stock which, on the death of Joseph Whaley, stood in his name, or to show how he may have been divested of his title thereto ; the respondents to be at liberty to offer testimony in rebuttal." And by an order of the Circuit Court of the 28th of February, 1877, the cause was referred back to me, as special referee, to take the testimony which might be offered under the provisions of the order of the Supreme Court. ˙By the original order of reference, filed on the 12th of September, 1874, I was appointed special referee to inquire and report upon the facts, with leave to report any special matter. Under the order of the Circuit of the 28th of February, 1877, I have held numerous references, and have taken the testimony offered by the city council, defendant, and the testimony offered by the plaintiffs in rebuttal, as provided for by the said order. I have been attended at these references by counsel representing the plaintiffs, and the other creditors of the late Joseph Whaley, deceased, and by counsel representing the city council of Charleston, defendant; counsel also appearing for the executor of Joseph Whaley, deceased, co-operating with the counsel for the city council.

The testimony was carefully taken down, and is filed with the report. Photographic copies were also made of all the signatures of Joseph Whaley introduced in evidence.

A considerable portion of the testimony was directed to the proof of handwriting and the examination of experts; and a comparison was instituted between the disputed signatures of Joseph Whaley and his acknowledged genuine signatures.

On the closing of the testimony, the points raised were very elaborately argued before me by Edward McCrady, Jr., Esq., and Samuel Lord, Jr., Esq., for the plaintiffs. Mr. Mitchell, representing the city council of Charleston, was present at the argument of plaintiffs' counsel, but declined to submit any argument himself. Mr. Mitchell took the position that the referee was not directed by the order of reference to do anything more than take the testimony and report the same to the court, and protested in advance against the argument proceeding, and against any waiver of his rights by his presence at the argument.

I proceed now, after a careful consideration of the whole case, to announce the conclusions of fact to which I have arrived.

The city stock, which stood in the name of Joseph Whaley, at the time of his death, is represented by certificates numbered 7, 12, 382, 383, 384, 386, 387, 393, 394, 395 and 396, and the object of the testimony offered by the city council was to show their right to this stock, or how the said Joseph Whaley may have been divested of his title thereto. I propose to take each certificate of stock separately, and state my conclusions as to each of them in turn.

Certificate No. 7, city stock, issue of June, 1852, for $23,000, principal sum.

This certificate, with the name of Joseph Whaley endorsed in blank, was pledged on the 5th of January, 1871, to the First National Bank, to secure a note of that date of William Whaley, endorsed Joseph Whaley, for $8000. This note was paid on the 20th of January, 1871.

On the 20th of January, 1871, this certificate was pledged to Pelzer, Rodgers & Co., to secure a note of William Whaley, for $10,000, at sixty days. The note of $8000, in the First National Bank, was paid out of this loan.

On the 3d of June, 1871, this certificate was pledged to Wm. C. Bee & Co., to secure a note of William Whaley and Joseph

Whaley of $11,500, at sixty days. The note was renewed for thirty days, and paid on the 8th of September, 1871.

On the 11th of January, 1872, this certificate, together with certificate No. 395, for $8000, and certificate No. 398, for $6000, and $6000 state bonds, was pledged by William Whaley to the People's National Bank, to secure his note of that date of $21,-900. In this note were consolidated all the notes of Mr. William Whaley held by this bank. It was a "call loan," and was marked paid on the 12th of April, 1872.

On the 19th of February, 1872, this certificate, No. 7, was transferred on the books of the city treasurer to H. G. Loper, cashier of the People's National Bank, and a new certificate, No. 51, issued therefor in his name.

On the 23d of May, 1872, this stock certificate, No. 51, was bought for account of P. J. Coogan, city treasurer, by J. H. Wilson, broker.

The above-mentioned certificate, No. 398, for $6,000, had been transferred on the 13th of September, 1871, from certificate No. 385, standing in the name of Joseph Whaley, to the South Carolina Loan and Trust Company.

It does not appear from the evidence how this scrip was redeemed and became pledged to the People's National Bank, to secure the aforesaid loan to William Whaley, of the 11th of February, 1872; nor does it appear from the evidence, by whose order the sale of the stock, represented by certificate No. 51, for $23,000, in the name of H. G. Loper, cashier, was made, or for whose account.

I find that the above-mentioned certificate, No. 7, for $23,000, with the name of Joseph Whaley endorsed thereon, was in the possession of H. G. Loper, cashier of the People's National Bank, prior to the death of Joseph Whaley, and was, by virtue of a transfer, written over the name of Joseph Whaley, transferred to him, in the books of the city treasurer, after the death of the said Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to H. G. Loper, cashier, is the handwriting of Joseph Whaley.

Certificate of city stock No. 12, issue of January, 1866, for $5220, principal sum.

This certificate, with the name of Joseph Whaley endorsed thereon, was in the possession of the People's National Bank some time prior to the 11th of January, 1872, as collateral security for loan. On the 19th of February, 1872, it was, by virtue of a transfer, written over the name of Joseph Whaley, transferred on the books of the city treasurer to H. G. Loper, cashier, and a new certificate, No. 1745, issued therefor in his name.

On the 1st of March, 1872, the new certificate, No. 1745, was transferred by H. G. Loper, cashier, to William Whaley; and on the 3d of May, 1872, William Whaley transferred of this certificate $3220 to Wm. C. Bee & Co., $1000 to Robert Hunter, and $1000 to C. F. Hencken.

I find that the above certificate, No 12, for $5220, with the name of Joseph Whaley endorsed thereon, was in the possession of H. G. Loper, cashier, prior to the death of Joseph Whaley, and was, by virtue of a transfer, written over the name of Joseph Whaley, transferred to him on the books of the city treasurer, after the death of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to H. G. Loper, cashier, is *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 382, issue of March, 1856, for $5200, principal sum, and

Certificate of city stock No. 384, issue of March, 1856, for $4000 principal sum.

I find that these two certificates, with the name of Joseph Whaley endorsed thereon, were purchased, on the 23d of April, 1872, by P. J. Coogan, city treasurer, from J. H. Wilson, broker, and were, on the same day, transfered to the commissioners of the general sinking fund No. 2, of the city of Charleston. The said certificates were consolidated, and a new scrip, No. 409, for $9220, issued therefor.

It does not appear from the evidence by whose order the sale of these two pieces of scrip was made, or for whose account.

I find that this stock, standing in the name of Joseph Whaley, was sold and the transfer made after the death of Joseph Whaley.

I find that the signatures of Joseph Whaley, endorsed on certificate No. 382, transferring the same to the commissioners of the general sinking fund, is *not* the handwriting of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on certificate No. 384, transferring the same to the commissioners of the general sinking fund, is *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 383, for $4780, principal sum.

This certificate, with the name of Joseph Whaley endorsed, was pledged, on the 20th of October, 1871, to Wm. C. Bee & Co., to secure a note of William Whaley, endorsed Joseph Whaley, for $2300, at thirty days. The note was renewed at maturity for thirty days, and was paid on the 27th of December, 1871.

On the said 27th of December, 1871, this certificate was pledged to the First National Bank, to secure note of William and Joseph Whaley, for $23,000, payable on February 25th–28th, and was entered as paid February 28th, 1872.

On the 23d of February, 1872, it was pledged to M. Triest, with power of attorney endorsed over the signature of Joseph Whaley, to secure note of William Whaley, in favor of M. Triest, for $2300, at sixty days, and was, on the 28th of February, by virtue of said endorsement, transferred on the books of the city treasurer to the said M. Triest, and a new scrip, No. 404, issued therefor in his name.

' The new scrip was transferred, on the 22d of November, 1872, to C. J. Huguenin, and on the 28th of February, 1873, to the commissioners of the general sinking fund, and canceled.

I find that the above certificate, No. 383, standing in the name of Joseph Whaley, was pledged, and the transfer and power of attorney made to the said M. Triest, after the death of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to M. Triest, with power of attorney to the said M. Triest to transfer the same, is *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 386, for $5000, principal sum, and

Certificate of city stock No. 387, for $5000, principal sum, issue of March, 1856.

These certificates, with the name of Joseph Whaley endorsed, were pledged, on the 14th of July, 1871, to R. T. Chisolm, to secure two notes of William Whaley of $2350 each, at six months. The notes were renewed at maturity for six months longer, and were paid in full on the 18th of July, 1872. The stock represented by these certificates was purchased on the said 18th of July, 1872, (together with certificate No. 393, for $10,000,) from J. Frazer Matthewes, by F. J. Pelzer, for account of the commissioners of the general sinking fund No. 2.

It does not appear, from the evidence, by whose order or for whose account the sale of the said stock was made.

I find that the stock represented by these two certificates in the name of Joseph Whaley, was sold, and the transfer made after the death of Joseph Whaley.

I find that the certificates of Joseph Whaley, endorsed on these two certificates, transferring the same to the commissioners of the general sinking fund, are *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 393, issue of March, 1856, for $10,000, principal sum.

This certificate, with the name of Joseph Whaley endorsed, was pledged on the 4th of September, 1871, to the First National Bank, to secure a note of William Whaley, of that date, for $5000. The note became due on the 3d of November, 1871, and was paid on the 8th of January, 1872.

On the 18th of July, 1872, this stock was purchased, together with certificate No. 386, for $5000, and No. 387, for $5000, from J. Fraser Matthewes, by Francis J. Pelzer, for account of the commissioners of the general sinking fund. These three certificates were consolidated, and a new certificate, No. 428, issued. It does not appear, from the evidence, by whose order or for whose account the sale of said stock was made. I find that the stock represented by the above certificate No. 393, standing in the name of Joseph Whaley, was sold and transferred after the death of Joseph Whaley. I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to the commissioners of the general sinking fund, is *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 394, issue of March, 1856, for $10,000, principal sum..

This certificate, with the name of Joseph Whaley endorsed, was pledged to the People's National Bank on the 23d of August, 1871, to secure a note of William Whaley for $5000. This note was paid on the 3d of October, 1871. On the 4th of November, 1871, it was pledged to William C. Bee & Co., to secure a note of William and Joseph Whaley of that date, for $5000, at thirty days. This note was paid on the 7th of December, 1871.

On the said 7th of December, 1871, it was pledged to William B. Smith & Co. to secure a note of William and Joseph Whaley of that date, for $5000, at sixty days. This note was paid on the 8th of February, 1872. On the said 8th of February, 1872, it was pledged to D. Ravenel, Jr., assistant cashier of the Citizens' Savings Bank of South Carolina, to secure a note of William Whaley of that date, for $5000, at sixty days. The note was renewed at maturity on the same security, to become due on the 13th of June, 1872, and was paid on the 7th of June, 1872.

This certificate was, by virtue of a transfer written over the name of Joseph Whaley, transferred on the books of the city treasurer, between the 8th and 19th of February, 1872,. to D. Ravenel, Jr., assistant cashier, and a new certificate, No. 402, issued to him, and receipted for on the last-mentioned date. I find that the above certificate, No. 394, standing in the name of Joseph Whaley, was pledged to D. Ravenel, Jr., assistant cashier, and transferred to him after the death of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on the certificate, transferring the same to D. Ravenel, Jr., assistant cashier, is *not* the handwriting of Joseph Whaley.

Certificate of city stock No. 395, issue of March, 1856, for $8000, principal sum.

This certificate, with the name of Joseph Whaley endorsed, was pledged to H. G. Loper, cashier, on the 30th of August, 1871, to secure a note of William Whaley, for $4000. The note was paid on the 11th of January, 1872.

This stock was again pledged on the 11th of January, 1872, to the People's National Bank, and was a part of the $37,000

city stock, pledged to secure the loan to William Whaley, of $21,900 above mentioned, which was paid on the 12th of April, 1872. On the 19th of February, 1872, it was, by virtue of a transfer, written over the name of Joseph Whaley, transferred on the books of the city treasurer to H. G. Loper, cashier, and became a part of certificate No. 401, for $14,000.

On the 23d of May, 1872, it was purchased by J. H. Wilson, banker and broker, for account of P. J. Coogan, city treasurer.

It does not appear, from the evidence, by whose order the sale of the said stock was made, or for whose account.

I find that the above certificate, No. 395, was in the possession of H. G. Loper, cashier of the People's National Bank, prior to the death of Joseph Whaley, and was, by virtue of a transfer, written over the name of Joseph Whaley, endorsed thereon, transferred on the books of the city treasurer to the said H. G. Loper, cashier, after the death of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to H. G. Loper, cashier, is *not* the handwriting of Joseph Whaley.

Certificate of city stock, No. 396, issue of March, 1856, for $6122, principal sum.

This certificate, with the name of Joseph Whaley endorsed, was held by the People's National Bank, some time prior to the 11th of January, 1872, and collateral security for loan.

On the 23d of February, 1872, it was, by virtue of a transfer, written over the name of Joseph Whaley, transferred on the books of the city treasurer to H. G. Loper, cashier, and a new certificate, No. 400, issued therefor in his name.

On the 23d of April, 1872, the said stock certificate, No. 400, was sold by J. H. Wilson, broker, to P. J. Coogan, city treasurer.

It does not appear, from the evidence, by whose order the sale of the said stock was made or for whose account.

I find that the transfer of the above certificate, No. 396, to H. G. Loper, cashier, was made after the death of Joseph Whaley.

I find that the signature of Joseph Whaley, endorsed on said certificate, transferring the same to H. G. Loper, cashier, is *not* the handwriting of Joseph Whaley.

I find that, by the last will and testament of Joseph Whaley, deceased, no power of sale is vested in his executor, and that no order has been made by the judge of probate for Charleston county, authorizing the sale of city stock belonging to the estate of Joseph Whaley.

Respectfully submitted.

G. W. DINGLE, *Referee.*

January 4th, 1878.

### EXCEPTIONS TO REPORT OF REFEREE.

Subject to the notice served on the plaintiffs' attorneys to set aside the report of the referee filed in this case, and to the motion for an order directing the referee to report the testimony of the city council in this case, and under the order of the Supreme Court and the Circuit Court, and the testimony of the plaintiffs in rebuttal thereof, the city council excepts to the report of the referee:

1. That in the report of the referee it plainly appears that in reporting, as he professes to do, conclusions of facts, such conclusions involve and depend on conclusions of law which are not in any order submitted to the referee; which he could not undertake to decide, and concerning which it would be necessary for him to have the instructions of the court upon the questions of law which were involved in and necessary for the ascertainment of conclusions of fact.

2. That the report of the referee, if it shall be considered properly filed as to the conclusions of facts therein set forth, is insufficient, because it does not report the conclusions of fact upon the testimony offered by the city council; that the testimony of the city council was positive in its character to show the right of the city council until the testimony so offered was impeached; that as no counter testimony did impeach it, and as nevertheless such testimony was discredited, it was necessary and proper for the referee to state the grounds upon which the positive testimony of the city council was, by the referee, discredited.

3. That in coming to a conclusion of facts, the referee has relied upon testimony which is wholly inferential, disregarding that which was positive and sustained the validity of the transfers,

without stating for what reason he declined to give weight to testimony which was positive and uncontradicted; and relied upon that which was merely inferential.

4. That the witnesses, Mrs. Rachel L. Whaley, Mrs. Bessie W. Seabrook and Mrs. Riordan, the last two the granddaughters of Joseph Whaley, and the parties who, if the transfer of the city stock, so far as Joseph Whaley was concerned, was not complete, were entitled to share in the same, but who testified against their own interest and to the declarations of Joseph Whaley, as having exercised absolute disposition of said stock, have been, in the findings of the referee, wholly discredited, without witnesses or circumstances to impeach their testimony.

5. That the referee, in coming to his conclusions of facts, disregarded the testimony of William Whaley, to the effect that Joseph Whaley kept the city stock himself, giving him the stock from time to time; the stock so given to William Whaley, according to the testimony of the other witnesses in the case, plainly appearing as absolutely parted with by the said Joseph Whaley, and so given to the said William Whaley for the purposes considered necessary by the said William Whaley.

6. That the referee did not report as a conclusion of fact, that the testimony offered in the case plainly proved such control of the city stock, given by Joseph Whaley to William Whaley, as would prevent the said Joseph Whaley, were he living, from asserting title to the same against a purchaser for value *bona fide,* and without notice.

7. That the claim of the plaintiffs to the stock depends upon the right of Joseph Whaley to the stock; and where a purchaser for value *bona fide,* and without notice, would prevail against Joseph Whaley were he alive, the same will prevail against all claiming to be his creditors, and whose rights are such as Joseph Whaley had. That the referee should have reported, as a conclusion of fact, that the city council being purchasers for value *bona fide* and without notice, the plaintiffs had no claim to the stock which Joseph Whaley was estopped from setting up against the city council.

8. That the referee should have reported, as a conclusion of fact, that the handwriting of Joseph Whaley, on all the notes

and bonds held by parties claiming an interest in the stock in question in this case, and which was in evidence, *was the same as that which appeared on the city stock;* and such was the testimony of E. H. Sparkman and others produced by the plaintiffs as experts.   Or, that if he did not adopt that conclusion of fact from this evidence, but did adopt the conclusion that it was not, the referee should have so reported as a conclusion of fact.

9. That the referee erred in denying to the city council the right of reply to the testimony of John E. Phillips; and also in denying to the city council the right of reply generally to the testimony of the plaintiff in rebuttal.

10. That the endorsement of the name of the owner of stock in blank, or to a designated person, on a certificate of city stock, is in fact the absolute disposition of the stock by the person whose name is so endorsed; and as such cannot be impeached in the hands of a holder *bona fide* and without notice.

11. That the referee should have reported that the city council proved their right to the stock claimed by them by transfers of the same, the said city council being purchasers *bona fide* for value and without notice; and that the title of Joseph Whaley in and over the said stock, had ceased so far as purchasers *bona fide* for value and without notice had been extinguished by his endorsement in blank and otherwise on said stock, leaving the same in possession of William Whaley, to be dealt with as he, William Whaley, chose, and without notice on the part of Joseph Whaley of any restriction upon the use of the endorsement of his name; and that evidence being uncontradicted that the said Joseph Whaley did, during his lifetime, deliver the said stock to William Whaley.

12. That the referee erred in not reporting that the city stock scrip No. 7 was in the possession of the People's National Bank during the lifetime of Joseph Whaley, and at the time of his death, with an absolute transfer and assignment thereof to H. G. Loper, cashier of the People's National Bank; and that it was sold by the said bank to the city council, the city council being the purchaser *bona fide* for value and without notice.

13. That the referee erred in not reporting that the city stock scrip No. 12, was in the possession of the People's National Bank

during the lifetime of Joseph Whaley, and at the time of his death, with an absolute transfer and assignment thereof to H. G. Loper, cashier of the People's National Bank; and that it was sold by the said bank to the city council, the city council being the purchasers thereof *bona fide* and without notice; and that the handwriting of the said Joseph Whaley, as it appears on the said scrip, was genuine, and the *same* as appears on all the notes and bonds introduced in evidence in this case as valid claims against the estate of Joseph Whaley, and to pay which it is claimed that the title of city council, as purchaser, should be set aside, and the parties holding such claims be held entitled to the said stock against the city council.

14. That in regard to scrips Nos. 382 and 384, the referee should have reported, as the only conclusion of fact, that the transfer thereof was made to the city council, a purchaser thereof *bona fide* for value and without notice, under an assignment and transfer thereof in blank by the said Joseph Whaley at some time in his life, when the said Joseph Whaley parted with the possession of said scrips; and that the handwriting of the said Joseph Whaley, as it appears on the said scrips, was genuine, and the *same* as upon all the notes and bonds introduced in evidence in this case as valid claims against the estate of Joseph Whaley and to pay which it is claimed that the title of the city council as purchaser should be set aside, and the parties holding such claims be held entitled to the said stock against the city council.

15. That the referee should have reported as a conclusion of fact in regard to scrips Nos. 383, 386, 387, 393, 394, 395 and 396, that said scrips were transferred and assigned by Joseph Whaley, in his lifetime; that the said city council became purchaser thereof *bona fide* for value and without notice; that the transfers thereof were made on the books of the city treasury, by parties claiming and holding under transfer and assignment of the said Joseph Whaley, in his lifetime; and that the handwriting of the said Joseph Whaley, as it appears on all of the said scrips, was genuine, and the *same* as it appears on all the notes and bonds introduced in evidence in this case, as valid claims against the estate of Joseph Whaley, and to pay which it is

claimed that the title of the city council as purchaser, should be set aside, and the parties holding such claims be held entitled to the said stock against the city council.

16. That the city council excepts to all that part of the report of the referee, in which he has gone into the account and narration of the history of each of the several scrips now held by the city council, and that such account and narration is not correct, and that the same in nowise can be introduced to affect the title of the city council to the scrips held by it, nor admissible in a proceeding to which the parties to be affected by it, and through whom title comes to the city council are not before the court nor parties in the cause.

JULIAN MITCHELL,
A. G. MAGRATH,
*Attorneys for City Council.*

THOS. Y. SIMONS,
*Corporation Counsel.*

I adopt the above for the executors of Joseph Whaley.

W. JAMES WHALEY,
*Attorney for Executors.*

### DECREE.

The complaint in this case is in the nature of a creditor's bill, the plaintiffs in their own behalf claiming, as creditors of Joseph Whaley, to have certain city stock, at the time of the death of Joseph Whaley standing on the books of the city treasury in his name, and transferred subsequently to his death, administered as assets of the estate of Joseph Whaley. The city council of Charleston will, for the present, be considered as the defendant principally interested in the relief asked in the complaint.

A large portion of this stock was purchased by the city council for the commissioners of the sinking fund, and other portions of the stock have been transferred on the books of the city treasury to other persons. The plaintiffs ask that the city stock purchased by the city council and transferred to the commissioners of the sinking fund, and the city stock also on the books of the city treasury transferred to other parties purchasing the same, be accounted for as part of the estate of Joseph Whaley.

Joseph Whaley died on the 26th day of January, 1872, leaving a will unrevoked, and appointed therein an executrix and two executors; of these, his son, William Whaley, named in the will as executor, only qualified. The complaint in this case has been substituted for another, filed in the name of the People's Bank, to which the city council was not a party. An order made in that case allowed this complaint to be filed in place of that, and another order directed all the claims proved in the case of the People's Bank to be transferred to this case of Fraser & Dill, and be considered as proved in this.

Under an order of reference in this case, the case was referred to G. W. Dingle, Esq., who proceeded to hold his reference in the same, and made his report.

This report was confirmed, and an appeal taken to the Supreme Court. The Supreme Court, for the reasons set forth in the opinion, sent the case to the Circuit Court with directions, according to which, under the order of the Circuit Court, the reference was opened, testimony taken, and a report made to this court, to which exceptions have been filed.

According to the opinion of the Supreme Court, the real issue as to the stock was the right of ownership in it at the death of the testator.

That the plaintiffs' right to the relief asked was through the right of the testator to it at the time of his death, and its liability as his property to respond to the demands which they hold against him as creditors.

The case was then remanded for the purpose of allowing said city council to offer evidence of their right to the stock, which, on the death of Joseph Whaley, stood in his name, or to show how he may have been divested of his title thereto, the respondents to be at liberty to offer testimony in rebuttal. The Circuit Court, in its order of reference, was guided by the directions of the Supreme Court as to the scope of the reference, and the parties appeared before the referee, the defendant, the city council, to offer evidence of its right to the stock, or to show how the title of Joseph Whaley was divested.

The title set up by the city council was that of a purchaser for value *bona fide,* and without notice. The property of Joseph

Whaley in the stock was claimed to have been divested by his blank endorsement on the scrip before his death, and his parting with the scrip so endorsed to third persons, to whom the transfer was made after the death of Joseph Whaley, these persons pro-ducing to the city treasurer the certificates of stock purporting to have the endorsement thereon of Joseph Whaley, and surrendered to the city treasurer, by whom new certificates were given, and from these persons the city council purchased the stock.

This is the history of the greater portion of the stock purchased by the city council. Other stock, purchased by other parties and transferred to them, different perhaps in some respects from this, but in the view now to be taken of the case it is not necessary particularly to distinguish it from that held by the city council at this part of the decree. In the argument of the case two propo-sitions were discussed.

1st. Supposing the endorsement of Joseph Whaley to be in his own handwriting, what is the legal nature and effect of that en-dorsement?

2d. Is the endorsement in the proper handwriting of Joseph Whaley?

The second of these propositions is a question of fact. To this question quite a number witnesses were examined before the referee, and their testimony filed with the report. A number of the proven or admitted signatures of Joseph Whaley were also put in evidence, and these, together with the disputed signatures upon the scrip, were photographed and pasted together upon large sheets of paper and submitted to me at the hearing. After a careful review of all the testimony, my mind is forced to the conclusion that the findings of the referee are correct, and the exceptions thereto are overruled, and the report confirmed and ordered to stand as the findings of the court upon matters of fact.

It is useless to discuss the effect of an endorsement not made by Joseph Whaley. Of course Joseph Whaley was not divested of his title to scrip by endorsements not made by himself or by his authority.

This disposes of the question of the validity of the transfer by the city council of all the city stock which stood on the books of

the city treasurer in the name of Joseph Whaley at the time of his death, except scrip No. 7, for $23,000.

In relation to this scrip, the facts found are as follows: " I find that the above-mentioned certificate No. 7, for $23,000, with the name of Joseph Whaley endorsed thereon, was in the possession of H. G. Loper, cashier of the People's National Bank, prior to the death of Joseph Whaley, and was, by virtue of a transfer written over the name of Joseph Whaley, transferred to him in the books of the city treasurer, after the death of Joseph Whaley.

" I find that the signature of Joseph Whaley, endorsed on this certificate, transferring the same to H. G. Loper, cashier, is the handwriting of Joseph Whaley. This certificate, then, was in the possession of Loper before the death of Joseph Whaley, endorsed by Joseph Whaley, and transferred on the books of the city treasurer to Loper after the death of Joseph Whaley." It appears, in the report of the referee, that there was issued to Loper, by the city council, scrip No. 51 in lieu of scrip No. 7. This stock was pledged to secure a call loan to the People's National Bank, on the 11th of January, 1872.

The call loan was marked paid on the 12th of April, 1872. Scrip 51 was bought by the city on the 23d of May, 1872. How the call loan was paid does not appear. There is nothing in the testimony to show that this stock was ever in the possession of Joseph Whaley in his lifetime, or of his personal representative after his death, after it was pledged to the People's National Bank on the 11th of January, 1872. Then Loper, the cashier, holding this scrip on the 11th of January, 1872, the scrip endorsed in blank by Joseph Whaley, and nothing appearing to impeach the transaction through which he held, must be regarded as the lawful holder, coupled with an interest, and had the right to do with it all that was necessary to effectuate the purpose of his so holding, and as it appears that the certificate representing this stock was sold by him, he is entitled to the presumption that it was so sold by him to effectuate the purpose of the pledge. *Baldwin* v. *Ely*, 9 *How. U. S.* 600.

Up to the time of the sale, Joseph Whaley in his lifetime, or his personal representative after his death, had the right to

redeem; but by the sale in pursuance of the agreement to pledge, the right to redeem was barred and the purchaser took a good title. The purchase related to the time of the pledge, and effectually divested Joseph Whaley of all title to the stock. Whether Loper held a power of attorney coupled with an interest, and therefore had the right to cause this stock to be transferred after the death of Joseph Whaley, and thus acquire the legal title, or whether he held a mere naked power which was determined by the death of Joseph Whaley, are questions that need not be decided in this decree in the view now taken of the case.

It is admitted in the argument that a delivery of the scrip with a power of attorney to transfer endorsed, passes the equitable but not the legal title.

According to the face of these certificates of stock, they can be transferred only upon the books of the treasury upon the appearance of the owner of the stock in person, or by attorney, and the surrender of the certificate. This is manifestly a regulation designed for the security of the bank itself, and of third persons taking transfers of the stock without notice of any prior equitable title.

The general construction which has been put upon other charters of their banks containing similar provisions as to the transfer of their stock, is that the provisions are designed solely for the safety and security of the bank itself and of purchasers without notice, and that as between vendor and vendee a transfer not in conformity to such provisions is good to pass the equitable title and divest the vendor of all interest in the stock. See *Black* v. *Zachria*, 3 *How. U. S.*, 513, and numerous authorities there collected. If any creditor had attached the stock without notice, perhaps the property would not have passed to Loper as against the attaching creditor, but there is nothing of that kind in this case. Whether Loper could effectually cause the stock now under consideration to be transferred, and thus acquire the legal title, under the view now taken, is of no consequence to the plaintiff in this action, as Joseph Whaley was as completely divested of the title to the stock by conveying the equitable title, as he could have been by transferring the legal title, so far as the plaintiffs in this action are concerned, and the fact that this stock was

transferred after the death of Joseph Whaley, can restore no rights to his estate that had been parted with in his lifetime. In the argument at the hearing the testimony to the effect that the signatures of Joseph Whaley upon the notes held by plaintiff and other creditors were in the same handwriting as the disputed signatures upon the city scrip, was pressed upon my attention, and it was suggested that if the disputed signatures upon the scrip were not genuine, then the signatures upon said notes were not genuine, and the holders thereof had not the right to sustain the relation of plaintiffs to this action. It was said, upon the other hand that for argument sake, admitting that the signatures of Joseph Whaley upon the notes were not genuine, there were other creditors of Joseph Whaley in whose behalf this complaint would be sustained. It was further said in this behalf that the notes referred to were in judgment, and had been therefore passed upon by a court of competent jurisdiction and could not be collaterally impeached, and could only be assailed in a direct proceeding instituted for that purpose. The issue thus raised is not ripe for decision in this decree, but may again arise in the subsequent progress of the cause.

As matters of law, I find that Joseph Whaley was divested of the stock represented by scrip No. 7, by endorsing the same to H. G. Loper, cashier, and the subsequent sale of the stock by Loper, in pursuance of his contract with Joseph Whaley.

I find that Joseph Whaley was not divested of the stock represented by certificates numbers 12, 382, 383, 384, 386, 387, 393, 394, 395 and 396, by any endorsement of the name of Joseph Whaley thereon, as such endorsement is not the handwriting of Joseph Whaley, or made by his authority, and that the said stock is still a part of the estate of Joseph Whaley.

It is therefore adjudged and decreed that the city stock which stood in the name of Joseph Whaley at the time of his death, except that represented by certificate No. 7, belonged to the estate of the said Joseph Whaley, and is subject to the payment of his debts.

It is ordered that the said city council do cancel, or cause to be canceled, the certificates of stock transferred to the general sinking fund, and which has been adjudged to belong to the estate of

Joseph Whaley, that is to say, certificates numbers 382, 384, 386, 387, 393, 395, 396, and do issue new certificates therefor in the name of the receiver, hereafter to be appointed in this cause, and that the said council do account with and pay over to the said receiver all dividends or interest thereon which have become due thereon since the death of the said Joseph Whaley.

3. It is further ordered that the said city council do account with the said receiver, when appointed, for so much of the said city stock which stood in the name of Joseph Whaley at the time of his death, and since transferred to other persons, that is to say, certificates of the following numbers, 12, 383, 394, and that said city council do pay to the said receiver when appointed, the market value of the said stock at the time of the said transfers, and do account with and pay over to the said receiver the amount of any and all dividends which may have become due from the time of the death of the said Joseph Whaley, up to the time of such payment.

4. It is further ordered that it be referred to G. W. Dingle, Esq., to inquire and report a suitable person to be appointed receiver in this cause, and the amount of security he should give in the same.

5. It is further ordered that said receiver have leave to institute such proceedings as he may be advised may be proper and necessary to try the validity of any claims against the estate of Joseph Whaley, and defend such proceedings as may be instituted against him.

W. H. WALLACE,<br>*Circuit Judge.*

April 8th, 1878.

From this decree the plaintiffs appealed, upon the grounds set forth in their argument.

The city council also appealed upon the following grounds:

*First.* Because there was no sufficient proof before the court that the complainants were creditors of the deceased, Joseph Whaley, and, therefore, no case was before the court in which an order could be made for an accounting with them by the

executor, or other act to be done connected with the administration of the estate and concerning which they had a standing in court.

*Second.* That the judgment of his Honor Judge Wallace rested upon an alleged want of proof of the genuineness of the signature of Joseph Whaley, the deceased, because of which the transfer of the scrip was held invalid. But there was the same want of proof of the genuineness of the signature of Joseph Whaley on the notes of the plaintiffs and others; and if the endorsements of the certificates of stock were invalid, the endorsements of the notes and the name of Joseph Whaley, signed to the bond, were equally so.

*Third.* Because his Honor Judge Wallace erred in holding that the issue as to the validity of the endorsements of the notes was not ripe for decision : that such issue was ripe for decision, and such decision should have been made dismissing the bill so far as the holders of such notes were before the court.

*Fourth.* Because while in the three preceding exceptions, the endorsements of the certificates of stock and of notes have been presented as equally affected by the proof of handwriting : nevertheless, in regard to the certificates of stock, there was competent and positive testimony sustaining the validity of the endorsements of the stock.

*Fifth.* Because his Honor Judge Wallace erred in deciding that in this case it was proper to appoint a receiver ; that if exceptions were taken to one of the executors, there was before the court, in the person of W. James Whaley, Esq., an executor of Joseph Whaley, who had, subsequent to the transactions set forth in the pleadings, qualified as such executor, and against whom no charge of improper conduct could be made.

*Sixth.* Because if it were so that a receiver would be appointed upon the proof before the court his Honor Judge Wallace, failing to decide the question of the invalidity of the endorsements of the notes, should have ordered the receiver not to recognize the endorsements of the notes as constituting valid claims against the estate of Joseph Whaley, until so established by the judgment of a court.

The following is a summary of the leading argument on each side, upon the law points involved :

*Mr. Julian Mitchell,* for city council.

The most striking fact in this whole case, and upon which the testimony is unanimous, is that, leaving out the Lathers bond and scrip No. 7, the signatures on the claims and debts of the estate held by the creditors are in the same handwriting as the signatures on all the city stock save No. 7.

We therefore say they are estopped from denying the validity of their debts, and consequently are bound by their own testimony that the scrip signatures are the same as on their debts.

It is said that estoppel is an odious doctrine, but in this case, if the view of the creditors that the signatures on the scrip are not genuine, then the doctrine of estoppel becomes one of the most just, equitable and righteous doctrines a court of equity has ever been called on to enforce. Are they, then, estopped ?

1. They claim by virtue of debts of Joseph Whaley to make Joseph Whaley's estate liable ; a denial of the genuineness of the endorsements creating their claims is a denial of the liability of the estate, and ends their case.

2. They claim that the endorsements are genuine ; have sworn to them in order to get their judgments, and each one, in his affidavit of proof of claim, has alleged the validity of the endorsements.

3. They have introduced them as such, *i. e.*, genuine notes, waiving the ruling of the referee; no one of them objected to their introduction ; no one objected to the witnesses testifying to them. The examination of the whole book of testimony does not show a single objection made by any of the parties in the cause to the genuineness of their claims ; in fact, such a thing could not have been done, because, by so doing, they would have been out of court. But it is said that Gibbon's note, Scott's bond, Davie's note and verdict of *Gadsden* v. *Whaley,* save the complaint. This cannot be so—

*First.* Because the parties holding these claims, being parties in the cause, raised no objection to the validity or genuineness of the signatures on the notes when presented in evidence ; nor did

any one of them impeach them, and, therefore, they are, by the familiar principle of evidence, bound by their omission to object.

*Secondly.* Because the Gibbon note, the Scott bond and Davie's note were all given at or about the very dates when the other notes were given, and the presumption is very strong that they bear the same signature.

*Thirdly.* The *Gadsden* v. *Whaley* claim on their verdict has not yet reached the point of judgment upon which the court could base a decree in this case, and the court would hold those whose notes have been proved in the cause, as bound by their position as to the genuineness of the signatures thereon, and without remedy against the city council.

The law, as laid down to sustain the above doctrine, is as follows: *Bigelow on Estoppel* 20, 25, 584, 617, 618; *Greenl. on Ev.*, § 535; 5 *Man. & G.* 131–192; 16 *Q. B.* 229–237; 5 *Hill* 183; 8 *Rich.* 117; 16 *Q. B.* 198; *Stephens' Ev.* 52; 8 *Paige* 41; 30 *N. Y.* 519–541; 18 *N. Y.* 382; 3 *Hill* 215.

*All* the creditors, therefore, in this case are estopped from denying the signatures on the notes and claims to be genuine, and *their own testimony* says it is the same signature on the scrip. How, then, can they recover?

While on this point I deem it best to discuss the fourth ground, to wit:

If all of the above grounds were to fail, then this stock is only liable, as the property of Joseph Whaley, for *his debts*, and if it appears, at any stage of the cause, that any party fails to have a valid debt, he will not be entitled to any portion of the stock or any remedy against the city council. *Broom's Legal Maxims* 712, 728, 734, 736; 15 *Mass.* 204.

But the plaintiffs insist that the city council cannot now question the signatures to the notes and obligations.

This proposition of theirs rests on two grounds:

1. That in those claims which were reduced to judgment, the judgment is conclusive as against every one, and cannot be questioned.

But the city council was no party to the proceedings. How can it then be bound by any judgment obtained therein?

The rule is unquestioned that a third person can always attack

or impeach a judgment to which he was not a party or privy when such judgment is the ground of any claim against him. *Freem. on Judg.*, § 334; 4 *Cush.* 31; 1 *Hill* 302; 8 *S. C.* 262.

2. The second ground is, that all these claims having been proved in this case without any exception to their proof within the time allowed by the rule of court, they cannot now be questioned or assailed.

But it is not possible for a Court of Chancery to use these claims as a shield to protect the fraud involved in the other cases. See the powers of the equitable jurisdiction of the Court of Chancery in C. J. Moses' decree, *Sp. Eq. Jur.*

II. The estate became divested of its title by the absolute transfer of the stock by the testator in his lifetime, of which there is no doubt as to scrip No. 7. Or by the hypothecation of the stock by virtue of a power of attorney executed during his life, and coupled with an interest, and therefore irrevocable.

The law as to the irrevocability of such powers coupled with an interest is as follows: 2 *Liv. on Ag.* 308; 48 *How.* 427; 13 *N. Y.* 599; 7 *Wall.* 415; 11 *Wall.* 369; *Sch. on Per. Prop.* 631–634; 1 *Bail.* 624; 12 *Rich.* 41; 4 *E. D. Smith* 440; 4 *Duer* 1; 1 *Duer* 354.

III. "The plaintiffs have no more right to the stock than that which Joseph Whaley, were he alive, could set up, and he, by parting with the control and disposition of the stock by handing the same over to his son, placed him in a position to deal with it as his own, and therefore if innocent parties are prejudiced by such action of the testator, the loss must fall upon the estate." 2 *Whart. on Ev.*, § 1154; *Rich. Eq. Cas.* 246; 2 *Johns. Ch.* 589; 10 *Ad. & El.* 437, 90; 6 *Ad. & El.* 469; 1 *Curtis* 136.

1. The last ground we will notice is the first as laid down in the beginning of the argument. The city council is a *bona fide* purchaser for value without notice.

The endorsements on the back of all the scrips are not powers of attorney, but absolute transfers. By the scrip itself, and the ordinances of the city, they are made payable to the party or his

assigns. All the requirements of the ordinance as to the transfer of title have been complied with. The title is actually transferred by virtue of the endorsement, and there is nothing to be done as between vendor and vendee—it is not a power, for there is nothing to be executed. The mere fact of the transfer in the books of the city is for the benefit of the corporation, as a safeguard to them. The authorities all hold it is an assignment and not a power.

These scrips are also negotiable instruments, and by an examination of the authorities here given, it will be seen the Supreme Court has so held.

Bonds of municipal corporations are commercial instruments. 2 *Otto* 642; 4 *Otto* 287; 11 *Wall.* 377. Important on the point that these securities savor of a negotiable character. 13 *N. Y.* 599. The case most directly in point is 19 *Wall.* 477. See, too, 9 *How.* 580; *A. & A. Corp.* 543, 547; 20 *Wend.* 91; 2 *Pick.* 243; 11 *Rich.* 344.

The provision usual in charters that no transfer of stock shall be effectual until entered in the books of the corporation, is a regulation designed for the security of the corporation itself and of third persons taking transfers without notice of any prior equitable transfer. It relates to the transfer of the legal title and not of any equitable interest subordinate to that title; as between vendor and vendee, a transfer not in conformity to such provisions passes the equitable title and divests the vendor of his interest. 2 *Cow.* 777, 778; 11 *Wend.* 628; 10 *Mass.* 476; 8 *Pick.* 90; 3 *How. U. S.* 483; 23 *How. Pr.* 359; 17 *N. J. Eq.* 117; 9 *Pick.* 202; 11 *Wend.* 627; 10 *Mass.* 476; 7 *Lans.* 307; 49 *N. Y.* 286; 48 *N. Y.* 585; 40 *Cal.* 614; 2 *S. C.* 25; 57 *N. Y.* 616; 10 *Bush* 54; 53 *Ga.* 514; 42 *Md.* 384.

It may be urged that the conclusions of the referee and the Circuit judge, so far as the facts found are concerned, are final, and cannot be disturbed. In answer to this we say that in chancery cases this court has the undoubted right to review the testimony, and reverse, modify or confirm the conclusions of the court below in like manner as the old Court of Appeals in Chancery could have done. 6 *S. C.* 90, 379.

The present case is one of chancery jurisdiction, and falls within the rule.

*Mr. Edward McCrady, Jr.,* and *Mr. Samuel Lord, Jr.,* for plaintiffs.

### THE PLAINTIFFS' APPEAL.

1. From so much of the decree of his Honor Judge Wallace as holds that Joseph Whaley was divested of the city stock represented by scrip No. 7, by endorsing the same to H. G. Loper, cashier, and the subsequent sale of the stock by Loper, in pursuance of his contract with Joseph Whaley.

The city council, unable to show a power of sale under the will, or an order of the Court of Probate authorizing the sale at which they purchased, have undertaken to show that H. G. Loper from whom they bought, held the same with a blank endorsement and power of attorney from Joseph Whaley, coupled with an interest. But how have they succeeded in doing this?

We think his Honor has assumed the very point in issue. Did Joseph Whaley endorse the stock to H. G. Loper, cashier? Did Loper have any contract with Joseph Whaley? There is no evidence that Joseph Whaley had any transaction whatsoever with Loper, nor has it even been suggested in evidence that there was any such. Whatever contract there was, was between Loper and William Whaley. But first, let us inquire was this scrip No. 7 a negotiable instrument which would pass by mere endorsement.

*a. Was this certificate of stock a negotiable instrument?*

This stock is the creature of statute, and is governed by the provisions of the statute which authorized its issue. Its very form is prescribed by ordinance, and on its face it is announced that it is "recorded in and transferable *only at the office of the city treasurer, by appearance in person or by attorney,* according to the rules and forms instituted for that purpose."

His Honor the Circuit judge seems to assume in his opinion that there was not only a blank endorsement, but also a power of attorney from Joseph Whaley to transfer, and it is just here that this case differs from most, if not from all of the cases relied upon

by the city. There was in each of those cases not only an endorsement, but a power of attorney accompanying it. See 6 *Rich. Eq.* 334; 37 *Eng. L. & Eq.* 195; 11 *Barb.* 385; 21 *How.* 397; 22 *Wend.* 359.

A case very similar to this has recently been discussed and decided in the Court of Appeals in New York. This case is *Merchants' Bank of Canada* v. *Livingston et al.*, found in *The Reporter* for August, 1878, p. 178.

In our case, the city council has never claimed that the People's Bank, or Loper, had dealt with William Whaley or the agent of Joseph Whaley. Their answer rests their defence upon the authority and agency of Loper.

Judge Wallace cites 3 *How.* 513, which undoubtedly sustains his position, but with this qualification, that Judge Story, in that case, was speaking of the legal title, and refers to the case, 2 *Wheat.* 393, in which he also delivered the opinion of the court.

*b. The city council must stand upon the issues made in the pleadings.*

It is clear that the transaction we are examining was not, as the city council allege, with Joseph Whaley, but with William Whaley, that the loan "was made to William Whaley," and the stock taken as " collateral security for money borrowed by Mr. William Whaley." The defence which the city set up in its answer is a *legal* one. It claims the legal title to the stock by reason of the transfer made by Joseph Whaley to *Loper*. The defence it has endeavored to establish by evidence is an *equitable* title under a blank endorsement.

The well-established rule is that a defendant must not only answer definitely, but that he can avail himself of no other defence, not even if on the trial another defence is developed by the evidence. 12 *N. Y.* 579. The same has been recognized and enforced by this court. 4 *S. C.* 52. See, too, 1 *Russ. & M.* 527.

But the city has not established the equitable title it would now set up:

The city council cannot put itself in the position of a stranger who is an innocent purchaser. The city knew, or at least is charged in law with the fullest knowledge, in regard to this

stock. The city is charged with the knowledge of the facts from its own books.

c. *The defence of the city is in violation of the statute of frauds.* (*Rev. Stat.* 480.)

The facts proved show that the estate of Joseph Whaley is charged for the debt of William Whaley. This cannot be done unless upon an agreement in writing, or some note or memorandum thereof, signed by Joseph Whaley, undertaking to answer for the debt of William Whaley.

d. *The debt for which the stock was pledged was paid, and the stock redeemed more than a month before the city purchased it.*

2. We proceed to consider the question based by the complainants' second ground of appeal, to wit, that the Circuit judge erred in directing the receiver to institute such proceedings as he may be advised are proper and necessary to try the validity of any claims against the estate of Joseph Whaley.

It will be convenient to consider, in this connection, the question raised in its appeal by the city, to wit, that there was no sufficient proof before the court that the complainants were the creditors of Joseph Whaley.

It is clear, 1. That no evidence has been introduced calculated even to cast suspicion upon the judgments held by Mary F. Davie, George E. Gibbon, R. K. Scott and Richard Lathers, or on the verdict recovered by Mrs. Gadsden, or the account proved by Mr. Ravenel, for advances made to Joseph Whaley in his lifetime.

Conceding, therefore, that all the other claims presented are spurious, these parties have offered sufficient proof before the court that they are creditors of Joseph Whaley, and, as such, entitled to maintain this action.

2. That the validity of none of the claims proved has, at any stage of these proceedings, been questioned, either by the executors of Joseph Whaley or by his legatees, or by his creditors, or by any other party entitled to raise that issue.

In support of the exceptions we are now considering, we submit the following propositions:

1. That the proper functions of a receiver, in a case like this, to which the executors are parties defendant, and the creditors

2 K

have been called in and have proved their claims, are simply to receive the funds paid into court and distribute them under the order of the court.

2. That this court has not the power to invest the receiver with such power and subject him to such obligations; that persons interested in the estate of Joseph Whaley, and not parties to these proceedings, will be bound by a judgment against him.

3. That it was competent, at the proper stage of these proceedings, for the executors of Joseph Whaley, or for any creditor, to object to any or all of the claims proved against his estate and not already in judgment. No such objection was raised by these parties, or any of them, at any stage of the proceedings. It was only raised on the Circuit indirectly in the argument of the counsel for the city, and is now only raised on appeal by the city, which had and has no right to raise it in any form or at any time, the city not being a creditor of Joseph Whaley, but simply a wrongdoer in unlawful possession of his property.

4. It is now too late for any of the parties to these proceedings to object to the validity of any of the claims reported as proved and established in the case. The referee's report was filed on the     day of     , 1875. Many objections were taken, but no objection was made to any of these claims. The report of the referee was confirmed by an order of court, made on the 28th of June, 1875, and the referee was directed to inquire and report in what order and rank the debts of Joseph Whaley, reported by him as proved and established in this cause, are to be paid. This decree was objected to on other grounds, but no objection was made on this ground. The only question which any of the parties to this case can now be permitted to agitate, is as to the order in which these claims are to be paid. On all other questions they are concluded. 1 *Rich. Eq.* 24; 7 *S. C.* 131.

5. If the legatees of Joseph Whaley, or other parties not now before the court have any equities, they must assert them in their own names in the mode prescribed by law and by the established practice of this court.

Even the creditors of a party defrauded have no right—though the fraud have the effect to diminish his means of paying them—

to set aside the fraud. "It is for the debtor," says the court in *Pettus* v. *Smith,* 4 *Rich. Eq.* 197, "to do so."

As we have already said, the city council is not even a creditor of Joseph Whaley or of his legatees. If the notes are fraudulent, the fraud was not perpetrated with a view to injure the city. It has no right, then, to raise this clamor.

Nor is it the duty of the Circuit Court, or of this court, to move in the right of those interested until they invoke the aid of the court. "Courts," says Chancellor Wardlaw, "are not the professional advisers of any portion of the community." See 7 *S. C.* 240.

6. As to the claims resting on judgment, we insist that the court cannot, in *this case,* pass upon the genuineness of the endorsements upon which judgment was obtained, because that question is concluded by the judgments rendered, and such judgments cannot be impeached collaterally, but can be set aside only on some direct proceeding before the court in which they were rendered. 4 *Otto* 352; *Bail. Eq.* 331; 2 *Hill Ch.* 469; 5 *S. C.* 8; 3 *Otto* 165.

The record, in this case, discloses no ground for any imputation of fraud against any of these judgment creditors, and still less is it proved that there was any collusion between them and the executor of Joseph Whaley. If, as has been so often insinuated by the attorneys for the city, the notes held by them are forgeries, they are the innocent victims of fraud and not its perpetrators.

April 16th, 1870. The opinion of the court was delivered by

HASKELL, A. J. Both parties appeal. The first, second and third grounds of appeal on the part of the city council are upon points which had either been already decided at the former trial, and not appealed from, or do not properly arise in the present case—at least at this stage of the proceeding. The fifth ground of appeal raises an objection to the appointment of a receiver. That point had been decided by the former judgment in this case and assented to by all parties, and is not a proper subject of appeal. The sixth ground is wholly without foundation. It will be time to appeal after something to appeal from has arisen.

There is no evidence that the receiver has recognized any of the notes referred to, or that their validity will be recognized except upon proper legal evidence. To set aside what has already been fixed by judgment and not appealed from, or by consent of the parties, can only be done upon proceedings for which the Circuit judge, in this case, made ample provision. The fourth ground of appeal is upon the finding of facts by the Circuit judge. This court is unable to perceive either a lack of evidence to warrant such finding, or such preponderance of evidence on the other side as would justify a reversal of the finding. The court is impressed with the force of the proposition that the hypothecation of such securities by the legal owner, or by another person with the previous consent or subsequent acquiescence of the legal owner, without endorsement or power of attorney, may constitute, by delivery, an equitable assignment, and act as an estoppel against the legal owner and creditors claiming through him. The question was not made in the court below, or, at least, has not received adjudication, and there is no appeal upon that ground. But, apart from that, the evidence does not give foundation of fact sufficient for the proposition of law to rest upon. There is no evidence to show that any of the parties to the transaction, or the officers of the city government by whom the transfers were made, were ever aware of or misled or induced by any expression of knowledge or acquiescence on the part of the testator. On the contrary, the evidence is conclusive that reliance was placed solely upon what was taken to be the signature of the testator, and there is no evidence of any negligence on his part which could be charged with contributing to the mistake on their part. In the eye of the law it is the same as if there had been no signature on the certificates of stock. The absence of signature was notice of lack of authority, and put the parties on their guard. The case would be different if the legal owner had been asked and had expressed his assent. There is no evidence that the testator knew of any of the transactions out of which these questions arise. Of course this does not refer to certificate No. 7, which is not now being considered. It is true that there is testimony of some general expressions made by him, but there is no link to connect them with the special transactions which

are before the court.   He could not have acquiesced in the transfers of the legal title to the stock, for the transfers were made after his death; that, therefore, cannot be in question.   The question is as to the hypothecation, and the essential fact is that the certificates, being in the possession of another person, were hypothecated or sold by him without authority in writing, but with the knowledge and consent or subsequent acquiescence, with or without previous knowledge, on the part of the legal owner. Did such fact exist, or is there any evidence to give it color? The evidence upon which it rests is parol testimony, given by members of the family and intimate friends of the testator. They testify as to language used by the testator in conversation with them severally or together at different times, but not in the transaction of business.   The drift of all this testimony is, that the testator had himself assigned the certificates by proper endorsement in writing, or, as it is said by one of the witnesses, "signed away the last of his city stocks."   This directly contradicts the fact on which the whole argument rests, viz., that although he had not "signed away" the certificates, he nevertheless had delivered them, and consented to, or afterwards acquiesced in, uses to which they were to be or had been applied without authority of law.   The truth is that these witnesses testified to prove, by corroborative statements of the deceased, that the signature on the certificates was in his handwriting. They did not, nor did they mean to, say that he acquiesced, or made any expression of acquiescence, in assignments which he had not made.   Besides, there is no evidence that any of these certificates were pledged prior to July, 1871, just six months prior to testator's death, but nearly all, certainly, were pledged within that time, and some within a very short time before his death.   The brevity of time, together with the great age of the testator, speak strongly against the probability of his having become acquainted with the facts as they have been developed by the trial, and there is no evidence that any of the parties to any of these transactions communicated to him that a certificate or certificates had been pledged.   Such being the circumstances, some of the statements on which stress is laid are dated by the witnesses as having been made about eighteen months prior to

the death of the testator, and twelve months prior to the time when the first of the transactions on which these statements are brought by the appellant to bear have been found to have actually occurred. With these remarks, made to prevent any impression that this court has decided upon the legal point made in the argument, but which is not involved in the case, the appeal on behalf of the city of Charleston must be dismissed.

The plaintiffs appeal from so much of the judgment as relates to scrip No. 7 of the city stock, and from so much as gives to the receiver leave to "institute such proceedings as he may be advised may be proper and necessary to try the validity of any claims against the estate of Joseph Whaley, and defend such proceedings as may be instituted against him." The prayer of the appellants' complaint asks that a receiver may be appointed to take possession of the property and its proceeds, and administer the same in the place and stead of the executor. The previous judgment in the case had granted the prayer and appointed a receiver clothed with power to administer in the place and stead of the executor, and no appeal was taken. The court had thus taken possession of the property, and is bound to see to its proper administration. The right to prosecute and defend the legal rights of an estate is absolutely essential. It could rest in no one more properly than in the officer of the court appointed to act in the place and stead of the executor. The judgment goes no further than that, and furnishes no ground for appeal. The leave to "try the validity of claims" by the institution of proper proceedings is, indeed, purely directory. If, when proceedings have been instituted, they are erroneous in any respect, objection can then be taken and judgment can be had. As the case now stands, the court sees nothing in this point that requires consideration.

The other matter of appeal is the judgment that, "as matter of law, * * * Joseph Whaley was divested of the stock represented by scrip 7, by endorsing the same to H. G. Loper, cashier, and the subsequent sale of the stock by Loper in pursuance of his contract with Joseph Whaley." Whatever may be the room to argue, generally, that power of attorney is revoked by the death of the donor, it does not affect the conclusion

arrived at in this case. If the stock had not been transferred and sold, and the bank were now to bring an action upon the facts as found, the executor would be ordered to make the transfer. If nothing has been which the court would not have ordered to be done, it is not the disposition of the court of equity to have it all undone because of immaterial informalities. The creditors have no rights which Joseph Whaley would not have had. "A creditor is not a purchaser, and cannot assert any right that could not have been enforced by the debtor. Hence an assignment which is valid as between the parties will also be good against creditors. *Westoby* v. *Day,* 2 *Ellis & Bl.* 605. And it has been held to follow that the delivery of a certificate of stock to a purchaser, attended with a power of attorney to transfer, will confer a right that cannot be impeached or set aside by a subsequent execution or attachment against the vendor." *Ryall* v. *Rowles, Lead. Cas. in Eq. Part II., Vol. II.,* (4th ed.) 1661; *Id., p.* 90; *Bank* v. *Campbell,* 2 *Rich. Eq.* 179; *Moss* v. *Bratton,* 5 *Rich. Eq.* 1. The rights of a creditor are subordinate to equitable as well as legal rights against the debtor. *Bank* v. *Campbell, supra.* The testator had signed the scrip in blank, and delivered it. It makes no difference whether the sale or pledge was made in person by the legal owner or by a party to whom he delivers it with a blank power. The pledge in this case seems to have been made by the party to whom delivery had been made by the original or legal owner. There is no difference between a sale and a pledge on the point now in question. There is no question about the right to redeem; no objection to the price for which the stock was sold, and no fraud charged. The sole question is that propounded in the order remanding the case, viz., Had the testator been divested of his title, and was the right of ownership in another at the time of testator's death? If he had been divested of his title, that is an end of the matter so far as these appellants are concerned, and that is all that is before the court for consideration. The bank came honestly into possession of the endorsed certificate in the ordinary course of business, "and is entitled to hold it against him who passed it, or enabled another to pass it to him." *State Bank* v. *Cox,* 11 *Rich. Eq.* 344. There is no real difference between that case of the *Bank* v. *Cox* and this case.

The power of attorney in each instance was blank. The fact that in *Bank* v. *Cox* there was a form of a power, and in this case nothing, is a distinction without a difference. Each was lacking until something was written by the holder over the signature of the endorser, so that in legal effect they are the same. The death of Joseph Whaley makes no difference. The executor of Madame Szeniere would have had no more power than she possessed. · All the authorities agree, though some go much further, that the delivery of the certificate of stock, endorsed with a blank power, and for value, is an equitable assignment which binds the legal owner, and that it arises from a power coupled with an interest which is irrevocable during the lifetime, and is *not* revoked by the death of the legal owner. The case of *Hunt* v. *Rousmamer*, 8 *Wheat.* 174, was decided upon the ground that the power was *not* coupled with an interest, and therefore did not amount to an equitable assignment. The delivery of the certificate of stock constitutes an equitable assignment, for the reason that the certificate is the muniment or evidence of title, and its delivery is symbolical delivery of the stock. *Angell & Ames on Corp.*, § 564. The right of the bank against the creditors of the testator is the same for purposes of defence as it would have been against him in his lifetime, and the city council is entitled, as against the claims of these creditors, to any defence which the bank might have. The creditors have no interest in the stock which Joseph Whaley had not when he died. Joseph Whaley unquestionably had assigned the certificates, and that constituted an equitable assignment of the stock. The bank could have compelled the city to transfer the stock. The city has only done what the court would have ordered to be done, and has in nowise damaged the creditors, and is not amenable to them for its conduct in the matter. With regard to the regulations on the subject of transfer, it is unnecessary to add anything to the conclusions stated by the Circuit judge and those reached by the court in *Bank* v. *Cox, supra.*

This case involves only the question as to the rights of the creditors. The moment the equitable assignment has been ascertained their rights are concluded. The legal owner would have been estopped, and they have no rights which he had not

at the time of his death, or when. in his lifetime, liens were fixed upon the specific property.    An equitable assignment is good between the parties; and, all having notice, the formal transfer in the mode prescribed by the charter or the regulations is binding on all parties.    *Sabin* v. *Bank of Woodstock,* 21 *Vt.* 353, cited in 2 *Lead. Cas. in Eq.* 1665.    The case of *Merchants' Bank of Canada* v. *Livingston,* recently decided in the New York Court of Appeals, and relied on by the appellants, is not in conflict with the principles in *Bank* v. *Cox, supra,* or in *McNeill* v. *Bank,* 46 *N. Y.* 325.    If the attorney in that case had acted upon his power, as the real owner, the stock would have been bound; but he, in fact, claimed *not* to be the owner of the stock, and failed to show authority to borrow money on it for the real owner.    There is no evidence that William Whaley gave notice to the bank that he was not the real owner of the stock, and the blank endorsement is direct evidence that he is the real owner by virtue of an equitable assignment.    Besides, *Bank* v. *Cox, supra,* is conclusive on the point, and we feel no disposition to question its authority.    The language of the Circuit judge that " Joseph Whaley was divested    *    *    *    by endorsing the same [the scrip] to H. G. Loper," &c., refers not to the actual transaction, but to the legal effect of the endorsement.    When the transfer is made by virtue of a blank power, it must be treated in law as an assignment from the one who was the legal owner to the person who becomes the legal owner by transfer on the books of the corporation.    There is, therefore, no material discrepancy between the facts and the conclusions of law.

It is contended by the appellants that the city council is confined to the issues made in the pleadings, and that the defence now relied on is not alleged in the answer.    There is nothing in the objection.    The issue on which the second trial was had, with the consent of all parties, was framed by the order of this court remanding the case for trial upon the point stated.    In the answer, however, there is a denial of Section 9 of the complaint, which constitutes a general denial of the title to the stock, and under this the defence could have been made.

Other exceptions taken were not pressed in the argument, and

it seems unnecessary to state further the reasons upon which the rulings of the Circuit judge are sustained.

The judgment is affirmed. Motion refused.

Judgment affirmed.

WILLARD, C. J., and McIVER, A. J., concurred.